Dear Mr. Saigo:
Your request for an opinion of the Attorney General was forwarded to me for research and reply. As I appreciate it, you would like three areas addressed:
 I. The authority for University Police Officers to stop individuals on campus and request identification. More specifically, if the individual(s) cannot provide identification or a legitimate reason for being on campus, does the University police have the authority to order/direct the individuals(s) to leave and not return to the campus?
 II. The authority to order individual(s) who gather and loiter around residence halls to leave and not return to campus?
 II. Legal requirements necessary to establish a written policy giving the University the authority to bar any individuals from the campus and from using the facilities on campus, including, but not limited to, individuals who may have been previously employed by the University and/or individual (s) who do not have any affiliation with the University?
In requesting this opinion, you expressed the concern that you share with your University Police about the number of unauthorized persons who frequent the grounds of your campus for no apparent reason, and the frequency of thefts experienced on the campus, both in classrooms, and in residence halls.
The first two issues concern authority of University Police to stop individuals on campus to request identification, and to order anyone without a legitimate reason for being on campus, or those who gather and loiter around residence halls to leave. Several provisions in the Louisiana Revised Statutes establish the boundaries within which University Police might address these problems.
The authority of university police officers is delineated in LSA-R.S. 17:1805, Section A(1)(a) and Section A(2)(a) which establishes that:
 ". . . those persons who are university or college police officers responsible for maintaining general order and exercising police power on the campus of a state-supported or a private college or university shall be designated as university or college police officers."
Campus police, therefore, are vested with the responsibility for "maintaining general order and exercising police power." Among the duties and powers of police employees, LSA-R.S. 40:1379 requires police to "prevent and detect crime, apprehend criminals, enforce the criminal and traffic laws of the state, and perform any other related duties imposed upon them by legislature."
More specifically, LSA-C.Cr.P. Art. 215.1(A) allows that a:
 "A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions."
The aforementioned duties of the University Police must be balanced, however, with LSA-R.S. 14:328, which reads:
 Section 328. Obstruction or interference with members of staff, faculty, or students of educational institutions; trespass, damage to property; felony; penalties:
 (A) No person shall, on the campus or ground of any state or public owned and operated junior college, college university or branch thereof or any high school or junior high school in this state, hereinafter referred to as "educational institutions", or at or in any building or other facility thereto, willfully deny to students, school officials, teachers or other employees and invitees and guests thereof:
(1) Lawful freedom of movement on the campus or grounds;
 (2) Lawful use of any property or facilities of any educational institution; or
 (3) Their right of lawful ingress and egress to and from the physical facilities of such educational institution.
 (B) No person shall, on the campus or grounds of any educational institution or at or in any building or other facility owned, operated, controlled or administered by the governing authority of any such institution, willfully obstruct or impede any member of the faculty or administrative staff or other personnel of such institution in the lawful performance of their duties, or willfully obstruct or impede any student of such institution in the lawful pursuit of his educational activities or activities related thereto or a part thereof, through the use of restraint, abduction, coercion or intimidation, or by any actions as a result of which force and/or violence are present or threatened. (Underlining is our own emphasis)
 (C) No person shall willfully refuse or fail to leave the property of or any building or other facility owned, operated, controlled or administered by the governing authority of any such institution of higher education upon being requested to do so by the chief administrative officer or his designee charged with maintaining order on the campus or grounds and in the facilities thereon, if such person is committing, threatens to commit or incites others to commit any act which would disrupt, impair, interfere with or obstruct the lawful missions, processes, procedures or functions of the educational institution.
 (D) Nothing in this section shall be construed to prevent lawful assembly and peaceful and orderly petition for the redress of grievances, including any labor dispute between an educational institution and its employees, or any contractor or subcontractor or any employees thereof. Providing that nothing herein contained shall apply to a bona fide legal lawful labor organization or to any of its legal activities such as picketing, lawful assembly or concerted activities in the interest of its members for the purpose of accomplishing or securing more favorable wage standards, hours of employment and working conditions.
 (E) Whoever violates any provision of this section shall be punished by a fine of not to exceed five hundred dollars or be imprisoned for not more than six months, or both.
 (F) The provisions of this section shall be supplemental and in addition to any other applicable laws of this state.
This statute both guarantees students, school officials, teachers or other employees and invitees and guests thereof lawful freedom of movement on campus, lawful use of any property or facilities of any educational institution; or the right of lawful ingress and egress to and from the facilities and prohibits any interference with educational activities. Most importantly, the provision explicitly requires that no person shall willfully refuse or fail to leave the property of or any building or other facility owned or operated by the governing authority of any such institution upon being requested to do so if such person is committing, or threatening to commit, any act which would disrupt, impair, interfere with or obstruct the lawful missions, processes, procedures or functions of the institution. Since maintaining a safe campus environment, especially near residence halls, is an inherent aspect of the institution's educational mission, and because individuals without a legitimate reason to be on campus, or those loitering near residence halls, pose a threat to this valid institutional objective, University Police may address these individuals as their professional judgment dictates.
La. Code of Criminal Procedure, Article 215.1(A) requires only that the officer reasonably suspect the subject is committing, has committed, or is about to commit an offense. The following guidelines are extracted from State v. Hall,581 So.2d 337 (La.App. 3 Cir. 1991).
The police have the right to engage anyone in conversation, even without reasonable grounds to believe they have committed a crime. As long as the person questioned remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would require some particularized and objective justification under the Fourth Amendment. (citations omitted).
University Police may request identification in the situations for which concerns have been expressed, but in doing, so, they must remain cognizant of the individual's right to leave without complying with the officer's request for identification. It would seem, however, that if the officer's approach and initial questioning as to the individual's purpose for being present on campus, and for identification, resulted in the individual's departure, then the objective is partially achieved.
The third question that you present concerns the legal requirements necessary to establish a written policy giving the University the authority to bar any individual from the campus and from using the facilities on the campus, including, but not limited to, individuals who may have been previously employed by the University and/or individual(s) who do not have any affiliation with the university.
The extent to which the University has promulgated policies in this area reinforces the authority of the University Police to address the aforementioned concerns. LSA-R.S. 14:328, which is reproduced previously in this opinion, designates the parameters within which your policy may bar individuals. Basically, the rules and policies that you wish to adopt must have some apparent relationship to the educational process, such that enforcement of the rule clearly furthers a valid educational mission or function of the institution. LSA-R.S.14:328 establishes with precision that the guaranteed freedom of movement on the campus, or use of the property of the institution, must be lawful. University police, therefore, may address loitering by enforcement of the vagrancy law or the city ordinance that prohibits loitering.
LSA-R.S. 17:3351(c)(3) mandates that, among other powers and duties of university management boards, each must adopt a policy that requires:
 "each institution to develop and adopt written security rules, regulations, and procedures. Such rules, regulations, and procedures shall include but need not be limited to the following information:
(a) Procedures for responding to emergencies or criminal actions.
(b) Procedures for securing campus buildings and residence halls.
 (c) Procedures for investigating violations of criminal statutes and university regulations.
 (d) Procedures related to campus police and other security personnel activity within student housing.
 (e) Rules and regulations governing the possession and use of firearms by campus police and other security personnel.
 (f) Rules and regulations governing the possession and use of firearms by employees, students and visitors.
 (g) Security considerations used in the construction, maintenance, ground-keeping, and lighting of campus buildings and grounds.
 (h) Methods used to inform the campus community about security matters."
In conclusion, Southeastern Louisiana University is required to develop and adopt written security rules, regulations, and procedures, such that are necessary to serve campus buildings and residence halls, for example. Ultimately, however, the institution's security policies should reflect furtherance of valid educational objectives, one of which would be creating and maintaining a safe and secure campus environment. Since LSA-R.S. 17:3351 vests the management boards with a duty to adopt security policies, perhaps they can provide direction in developing rules that demonstrate a sufficient connexity to educational processes.
I hope this opinion has adequately addressed the concerns and issues that were included in your request. Should you have any further questions regarding this matter, please contact our office.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: BETH A. CONRAD Assistant Attorney General
RPI/BAC:pab 0162p